## 16373

### KABLE *ET AL.* v. SIMMONS
### (60 S. E. (2d) 79)

*Messrs. Waring & Brockington* and *Moore & Mouzon*, of Charleston, *for Appellant,*

162

*Messrs. Hagood, Rivers & Young,* of Charleston, *for Respondents,*

June 15, 1950.

Oxner, Justice.

Respondents and appellant are owners as tenants in common of (1) two lots of land on Rutledge Avenue in the City of Charleston, (2) a tract of land in St. Andrew's Parish, Charleston County, known as Windemere, and (3) a tract of land in Orangeburg County known as Snake Swamp Plantation. They acquired the Windemere property under the will of their father, James S. Simmons, who died in 1933. Prior to the death of Mr. Simmons, that portion of the Windemere tract lying to the east of the county road and to the north of the Atlantic Coast Line right of way was subdivided and developed as a residential area and a

number of lots were sold by him. After his death several more were sold by the parties to this action. The only lots in this subdivision now owned by the children are 79 and 184 in Block B. The other portion of the Windemere property consists of a large undeveloped acreage.

Respondents and their brother, the appellant, were unable to agree on a method of handling some of the property and unfortunately differences developed. In August, 1948, this action was brought to partition the real estate. Respondents alleged in their complaint that the property could not be divided in kind without serious damage or loss to the owners and that it was necessary to sell same at public auction. At that time counsel for plaintiffs was unaware of the fact that the parties owned lots 79 and 184 in Block B of the Windemere property and, consequently, they were not mentioned in the complaint. The importance of this omission will hereinafter appear. The Rutledge Avenue property and the Snake Swamp tract were properly described in the complaint. However, the description of the Windemere property only covered the "undeveloped acreage" and specifically excluded that portion "lying to the East of the County Road as shown on the said Plat and to the North of the Atlantic Coast Line Right of way as shown on said Plat." The two lots above mentioned are located in the area thus excluded. It was alleged in the complaint that the real estate described therein was all the property in South Carolina which the parties owned as tenants in common.

In his answer appellant admitted that he and respondents were tenants in common of the real estate described in the complaint but denied that same constituted all the property in South Carolina in which they had common ownership. He further denied that "the undeveloped acreage at Windemere and the property known as Snake Swamp" could not be divided in kind or that it would be for the best interests of the parties to sell the real estate at public auction. The above answer was served on October 7, 1948, the time for

answering having been extended. Accompanying said answer was a letter by appellant's attorney to respondents' attorney in which, after stating that his client desired to "submit some proposal for disposing of the matters in controversy", he made the following offer.

"In order to make any division of the properties jointly owned it is, of course, essential to arrive at some value for each. Accordingly, for the purposes of settlement between all of the parties Ralph (appellant) has arrived at a value for the Windemere acreage of $127,000.00, for the Rutledge Avenue property a value of $17,000.00 and for the Snake Swamp property a value of $14,750.00. The total of these values is $158,750.00 and dividing the total into five shares would result in a value for each shareholder amounting to $31,750.00. In order that your clients might be enabled to dispose of the Windemere property as they wish, Ralph is willing to accept any one of the following propositions:

"1. $30,000.00 in cash, or in property or securities equivalent to that value, for his interest in all of the real estate above mentioned.

"2. The Rutledge Avenue and the Snake Swamp properties in exchange for his interest in the Windemere property.

"3. The Rutledge Avenue property and $14,750.00 in cash, or the equivalent, in exchange for his interest in the Windemere property.

"4. The Snake Swamp property and $17,000.00 in cash, or the equivalent, in exchange for his interest in the Windemere property."

On October 25, 1948, as a result of a telephone conversation between said attorneys, proposal No. 3 was amended so as to read as follows: "3. The Rutledge Avenue property and $14,750.00 in cash or the equivalent in exchange for his interest in the Windemere property and his interest in the Snake Swamp property." (It is conceded that the failure to include the Snake Swamp property in the original proposal

No. 3 was due to an oversight.) Immediately after the above telephone conversation, respondents' attorney wrote a letter to appellant's attorney confirming said conversation and stating that his clients would accept offer No. 3 as amended. He also said that he would endeavor to close the matter as soon as practicable. On the same day appellant's attorney acknowledged receipt of this letter and stated that he was gratified that the parties had been able to agree on a settlement.

For reasons not pertinent to this appeal, appellant declined to carry out the above agreement. On December 7, 1948, respondents served a supplemental complaint seeking specific performance of the agreement embodied in the foregoing letters. No mention was made therein of the two lots involved in this controversy. Appellant filed an answer in which he admitted making the agreement but denied that he was obligated to perform same.

The case was referred to the Master who took the testimony offered by the parties during July, 1949. At the commencement of the reference respondents' attorney stated that he had inadvertently failed to include lots 79 and 184 in Block B of Windemere in said proceedings and asked leave to amend his complaint so as to include them. Appellant's attorney offered no objection and the amendment was accordingly allowed. The Master held that appellant should be required to specifically perform the agreement which he construed as including an obligation to convey to respondents lots 79 and 184 in Block B of Windemere. Appellant excepted to the inclusion of these lots in the agreement and contended that they should be sold for partition and the proceeds equally divided among the five children. The exceptions to the Master's Report were heard by the presiding Judge during the October, 1949, term of the Court of Common Pleas for Charleston County. On November 29, 1949, an order was filed confirming the report of the Master. This appeal followed.

The sole question for determination by us is whether the argeement embodied in the exchange of letters between appellant's and respondents' attorneys contemplated the conveyance by appellant of his interest in lots 79 and 184 in Block B of the Windemere subdivision.

No testimony was offered as to the intention of the parties with reference to the inclusion in the agreement of the two lots mentioned. We intimate no opinion as to whether such testimony would have been competent, if offered. There has been no effort to reform the contract. Respondents make no claim of fraudulent concealment or that appellant did anything to mislead them as to the ownership of these two lots. The question before us must be determined solely by the intentions of the parties as expressed in the letters. Of course, we are not at liberty to consider the undisclosed or secret intentions of the parties but must be governed by their outward expressions.

It may be conceded that respondents and their attorney were under the impression that the agreement required appellant to convey all of his interest in the Snake Swamp tract and the Windemere property. But respondents' counsel could not have contemplated that his clients would acquire under this agreement the interest of appellant in the two lots in controversy because at that time he did not know that the parties owned them. It is equally clear that appellant's counsel did not contemplate the inclusion of this property in the agreement. During oral argument he frankly stated that he knew when the letters were written that the parties owned these two lots but said he made no effort to include them in the settlement because there had never been any disagreement as to the proper method of handling them. The value of these lots does not appear in the record but it is conceded that they are worth around $2,500.00 or $3,500.00. Although in his letter of October 7th, appellant's attorney placed a value on all the property involved in the settlement, no reference is made to the two lots or their value. On the

contrary, the valuation in this letter was specifically placed on "the Windemere acreage". When appellant's counsel used the expression "the Windemere property" in proposition No. 3, he evidently intended to refer to the "Windemere acreage" upon which he had previously placed a value for settlement purposes, and was using the same terminology to describe the undeveloped acreage as was used by respondents in their complaint.

The statement in the letter of October 7th that appellant desired to "submit some proposal for disposing of the matters in controversy" must be construed in connection with the pleadings. The description in the original complaint of the Windemere property is only of the undeveloped acreage and there was specifically excepted the area in which the two lots in controversy are located. While respondents alleged that the property described in the complaint constituted all the property in South Carolina owned by the parties as tenants in common, this allegation was denied in the answer. In the supplemental complaint filed after the agreement was made, reference is only made to the real estate described in the original complaint. The first time the two lots in controversy were mentioned was at the commencement of the reference when the pleadings were amended so as to include them. It is true that appellant's counsel did not object to this amendment but we do not think it can be reasonably inferred that he thereby acquiesced in the contention that the agreement previously made was intended to include these lots. It was proper to include them in the partition proceedings. Appellant's counsel has never contended that they should not be partitioned.

It is our view that the parties did not have a distinct intention common to both. They did not "assent to the same thing in the same sense." *Shealy v. Fowler,* 182 S. C. 81, 188 S. E. 499, 503. Appellant knew that he and his brothers and sisters owned the two lots in controversy but did not intend to include them in the settlement

Respondents' attorney did not know that the parties owned these lots when his clients agreed to the settlement and, therefore, could not have had them in mind when he accepted appellant's offer. If respondents knew that the parties owned the two lots, they were negligent in not disclosing this information to their attorney so as to enable the latter to include them in partition proceedings and the settlement which followed. We regret the difference in the intentions entertained by the parties but we are not at liberty to make a contract for them.

That portion of the order appealed from is reversed and the case is remanded for the purpose of partitioning all property owned by the parties.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.